The next case, 1-5-0-9-6-5 Manuel Beltran v. City of Chicago. Council. Good afternoon, your honors. May it please the court, my name is Dennis Lynch from the Healy Law Firm. I represent the employee and appellant Manuel Beltran. The primary issue in this case that drives the commission's decision is whether Mr. Beltran's 2008 knee condition was related to his 2006 accident at work. The accident is undisputed. Surgery was paid. Benefits was paid. When Mr. Beltran returned and received treatment in 2008, the recommended treatment was denied. In this case, Mr. Beltran is a City of Chicago employee. The City of Chicago sent him to Mercy Works, which is their occupational clinic. Mercy Works, the Mercy Works physician in 2008, took Mr. Beltran off work due to a work-related condition and recommended physical therapy. Now, Mercy Works had also directed, and therefore the City directed, Mr. Beltran to Dr. Madej, an orthopedic surgeon. Dr. Madej, in 2008, when he saw Mr. Beltran again, noted that he was seeing him for, quote, the same condition as he had seen him for in 2006. And Dr. Madej confirmed that in his deposition testimony, that the pain that Mr. Beltran was experiencing in 2008 he believed was muscular weakness from either the surgery itself or the initial injury. Despite those facts, the commission denied a causal connection. The commission's decision, unfortunately, relies on speculation and speculative opinions of Dr. Bush-Joseph. It's also just flat incorrect in some areas. Well, tell us why the testimony of Dr. Bush-Joseph is speculative. Well, because Dr. Bush-Joseph primarily relies on what Dr. Madej would have done in January 2007 if Mr. Beltran had been seen in January 2007. That's not an opinion that Dr. Bush-Joseph can come to, for one. It's a question, I suppose, that could have been asked of Dr. Madej and wasn't. But in any event, it's certainly not something Dr. Bush-Joseph can say. There's also the issue that we have in this case, a unique issue. Obviously, it's the commission's role to address the credibility of witnesses and to resolve conflicts in the evidence. So did Madej say that the claimant's current state was probably related to the workplace accident? Did he say probably? I think what he said was that it could be related. And what he said was that he had not fully discovered, fully assessed him because he was denied additional visits by the system. It's sort of a qualified opinion. It wasn't totally supportive of the claimant, was it? The deposition testimony was qualified. His records said he was treating him for the same condition. The problem we have here is Mr. Beltran repeatedly was kind of put in a catch-22. Dr. Madej said, well, I haven't fully discovered what was going on. But the city wouldn't let Mr. Beltran go back to Dr. Madej for him to fully discover it. And it's a similar situation to the fact that in May 2007, when Mr. Beltran attempted to go seek additional medical treatment, the Committee on Finance says, no, you can't do that. And so the situation – I'm a little confused. This is a manifest wake case, isn't it? Yes. So we have to decide it based upon the evidence in the record at the time that the commission ruled. Certainly. In the record at the time they ruled was an unqualified opinion by Bush Joseph that his condition was preexisting and was either the result of a congenital or a post-traumatic deformity of the right knee and leg. And Madej testified that the claimant had a valgus deformity that was preexisting and thus not caused, aggravated or accelerated by his injury. And he could not testify as to whether the deformity worsened as a result of the injury, but stated there is a possibility that it did. Possibility is not evidence. Speculate. Well, you know, I think we've got a couple of issues there, Your Honor. And one is the valgus arthrosis versus kind of the meniscal and lateral injuries that he was treated for. Dr. Madej testified that there was – that the valgus arthrosis – and I'm probably not pronouncing that correctly – was not causing the employee any instability and that any change from 2006 to 2008 could be within measurement error. So in Dr. Madej's assessment, the valgus arthrosis isn't an issue at all. What we do have is we have 2006 MRIs and 2008 MRIs that both show problems with the lateral and medial meniscus. And that's what Dr. Madej wanted to treat. But Bush Joseph implied that his condition was caused by the valgus arthrosis. Well, and that's, Your Honor, there's – Dr. Bush Joseph's opinion isn't so clear, I think, because, you know, this was tried on an emergency motion to get physical therapy approved for Mr. Beltran's knee. Dr. Bush Joseph agreed that Mr. Beltran continued to have deficits with his right knee because of the accident. Dr. Bush Joseph was entirely silent on whether the physical therapy was reasonable and necessary and whether any need for physical therapy was – would be related to the accident or not. He agreed there was deficits and he said absolutely nothing about physical therapy, which is the issue the case was tried on. In terms of the valgus arthrosis, Dr. Bush Joseph said it was preexisting. He also said that that could be accelerated or aggravated by trauma, and he never came to any opinion as to whether it was aggravated or accelerated by the trauma. Didn't he say there was no medical evidence that it was? I'm sorry, Your Honor? Didn't he testify that there was no medical evidence that it was? I don't believe so, but obviously the record will bear that out. My recollection is he said it was capable of being aggravated. It could be accelerated by trauma, but he further testified that there was no medical evidence that the knee injury was. So? Your Honor, again, I think that, you know, the crux of the issue is does this guy need his physical therapy? And if so, you know, was that related to the accident? The final thing I'd like to say about Dr. Bush Joseph is we have a situation here, and again, certainly it's the Commission's role to address the credibility, but they never addressed the fact that a month before Dr. Bush Joseph ever saw this employee, the Committee on Finance ordered Mercy Works to close the case because this employee would be seen for an examination by Dr. Bush Joseph. They already knew the answer they were getting. And the Commission, despite being pointed that out, didn't address it. And the Commission also relied on the fact, in their mind, that Mr. Beltran had health insurance and could have gone to see another doctor. When the record is indisputable, he didn't have any health insurance. And again, that's something that was in the arbitration decision, was brought to the attention of the Commission, and the Commission chose not to modify that at all. And the Commission also relies, again, on speculation, that what would have happened in January 2007 if Mr. Beltran went back to work, pardon me, went back to the doctor, and whether the city may have been able to accommodate those restrictions. Well, the Commission's decision can't be based on speculation. There's also this contention in the record, or in the arguments, that essentially Mr. Beltran was ready to go back to work in December 2006, that he wasn't having any problems anymore or was almost done having problems. Well, again, that's not the case from the indisputable evidence. He saw a physical therapist on December 19th. The physical therapist said that knee pain was his main limiting factor. He sees Dr. Madej on the 20th. Dr. Madej still notices tenderness in his knee. He doesn't release him to return back to work. And he sees a Mercy Works physician that same day on December 20th. That physician notes pain of 5 out of 10 in the knee, tenderness in the knee, and limited flexion. So we have a situation here. We've got an employee who is still having right knee deficits, testified uncontradicted that he continued to have problems with his right knee throughout 2006, 2007, testified without contradiction that he tried to seek medical attention in May 2007, but the city wouldn't allow him. No evidence in the record of any intervening accident or other cause of a knee problem. So although the commission's decisions entail a deference, it does have to be based on the facts in the record. And I think in this case it's not based on the facts in the record, and I think that the opposite conclusion is clearly apparent. So unless there's any other questions, I would ask that you reverse the commission's decision. Thank you, counsel. Counsel? Good afternoon, Your Honors. Counsel, may it please the Court, my name is Joseph Zwick. I represent the city in this claim. And Justice Hoffman stated exactly what the point is in this case, and I'm not going to say it any better than that Dr. Bush Joseph rendered his opinion that this condition is independent of the original work accident. But in addressing the points that counsel brings up, counsel continues or claimant continues to talk about the fact that there is no instability with this valgus deformity. And that's really a red herring in this claim, Your Honors. No doctor is saying that the valgus arthrosis requires instability, you know, to contribute to the progression. Dr. Bush Joseph explained the mechanics behind this on page 276 in the record. He noted that there was a deformity, whether congenital or from a fracture, was beside the point. And he noted that one knee was, as he put it, sort of real knock-kneed. And he went on to say that when a knee is either congenitally or from a post-traumatic means excessively knock-kneed, the outer part of the knee has a tendency to wear out prematurely. So it's a fact, it's based on mechanics that the knee is not formed the way a normal knee is. Normal wear and tear leads to a valgus arthrosis, and that's what Mr. Faltran has. In November and December of 2006, his knee examination was essentially normal. Dr. Madej said so. He said that the range of motion was full strength, normal strength. Dr. Madej also said in page 237 and following that he was aware of what the job was, what the normal job was. He was aware that based on his examination at that time in December of 2006, he had recommended an appointment to come back in three weeks because he was going to return him back to work at that point. The only reason he didn't write it down on a sheet of paper saying return to work and have a piece of paper saying return to work is because of the detention in Texas on his way back from Mexico. The record, Dr. Bush-Joseph's opinion is based on sound medical reasoning. It's based on established facts in the record. Both Dr. Madej and Dr. Bush-Joseph agree that Mr. Faltran had a valgus deformity. Dr. Bush-Joseph explained how that valgus deformity leads to a valgus arthrosis. And the commission believed him. The commission believed him. Isn't that pretty much the deciding factor? That's exactly it. Thank you, Your Honors. Thank you, counsel. Counsel to reply. Just a few brief points. If Dr. Madej thought that Mr. Faltran could go back to work in three weeks, he could have written a note that day that says go back to work on January 10th. That's not what he did. He wanted him to come back. And there's a reason he wanted him to come back. It's because he still had not met those heavy-duty restrictions that were required of that job. At the end of the day, yes, the commission believed Dr. Bush-Joseph's opinion, but that opinion should not have been believed because it is not consistent with the manifest way of the evidence. We've got a 2006 MRI that shows problems with the lateral and medial meniscus. We've got a 2006 surgery addressing the lateral and medial meniscus. And we have a 2008 MRI that shows deficits with the lateral and medial meniscus. And Dr. Bush-Joseph never said anything about whether Mr. Beltran still needed physical therapy for the deficits that he acknowledged he continued to have. That's the reverse of the commission decision. Thank you. Thank you, counsel. The court will stand at recess until 9 tomorrow morning.